Bandstra, J.
Defendant appeals by leave granted the trial court’s order denying his application to set aside, or “expunge,” his 1979 conviction of assault with a dangerous weapon, MCL 750.82, on the ground that defendant was ineligible to seek expungement under MCL 780.621. We reverse and remand for consideration of the merits of defendant’s application.
1. BASIC facts and procedural history
While living in the state of Connecticut during the years 1975 through 1978, defendant was convicted of five misdemeanor offenses.[1] After returning to Michigan in 1979, defendant was convicted a sixth time after having pleaded guilty of threatening a co-worker *209 with a shotgun. In June 1999, defendant petitioned for and received an unconditional and absolute pardon for his five misdemeanor convictions from the Connecticut Board of Pardons. Defendant thereafter sought to have his 1979 Michigan conviction set aside pursuant to MCL 780.621, which permits “a person who is convicted of not more than 1 offense [to] file an application with the convicting court for the entry of an order setting aside the conviction.” MCL 780.621(1). The prosecutor, along with the Attorney General, opposed defendant’s application, arguing that defendant was ineligible for such relief because he had been convicted of more than one offense, to wit, the Connecticut misdemeanors. Although acknowledging that defendant had received a full pardon for his Connecticut convictions, the prosecutor argued that because the pardon was grounded not on the validity of the underlying convictions but rather on defendant’s efforts to rehabilitate himself, the pardon was the “functional equivalent” of an expungement under MCL 780.621, of which defendant was entitled to only one.[2] In response, defendant argued that given the sweeping manner in which Connecticut law “erases” a person’s conviction after pardon, his full and unconditional pardon was “more akin to an acquittal” of the misdemeanor offenses than an expungement, and that these offenses therefore should not be considered for purposes of determining his eligibility under the Michigan expungement statute. The trial court, although acknowledging that a Connecticut pardon is far more reaching in its effect *210 than an expungement under MCL 780.621, found that to grant defendant’s motion would nonetheless violate “the spirit, if not the letter, of the Michigan statute given the fact that he would not be entitled to relief had all of the convictions occurred in Michigan.” Accordingly, the trial court denied defendant’s application.
Defendant thereafter sought leave to appeal the trial court’s decision, arguing that the trial court erroneously treated his pardoned Connecticut convictions as if they were expunged Michigan convictions. Because the expungement statutes, MCL 780.621 et seq., do not specifically address the effect of a pardon on a defendant’s eligibility to have a conviction set aside under those statutes, this Court granted leave to appeal.
H. ANALYSIS
Defendant argues that the trial court erred in concluding that, despite having received a full and unconditional pardon for his Connecticut convictions, defendant was precluded from seeking relief under the expungement act. We agree.[3]
*211 As previously noted, the expungement act does not specifically address the effect of a pardon, whether granted in this jurisdiction or another, on a defendant’s eligibility to seek expungement of a subsequent conviction. Resolution of this matter therefore requires interpretation of the relevant statutory provisions. This Court reviews de novo questions of statutory interpretation. People v Rahilly, 247 Mich App 108, 112; 635 NW2d 227 (2001).
The primary goal of judicial interpretation of statutes is to give effect to the intent of the Legislature. People v Morris, 450 Mich 316, 326; 537 NW2d 842 (1995); People v Stephan, 241 Mich App 482, 496; 616 NW2d 188 (2000). The first criterion in determining such intent is the specific language of the statute. People v Stone, 234 Mich App 117, 121; 593 NW2d 680 (1999). If the statutory language is clear and unambiguous, the court must enforce it as plainly written. Morris, supra.
The statutory language at issue in this case is contained in MCL 780.621(1), which provides, in relevant part, that “a person who is convicted of not more than 1 offense may file an application with the convicting court for the entry of an order setting aside the conviction.” (Emphasis added.) It is not disputed that, in addition to the Michigan conviction defendant *212 sought to have expunged, defendant was convicted of several misdemeanor offenses in Connecticut.[4] Defendant argues, however, that because the Connecticut crimes have been unconditionally pardoned, they should not be considered as offenses for purposes of determining his eligibility for expungement under MCL 780.621(1). In making this argument, defendant asserts that the effect of his full pardon was to erase his convictions so that, as a matter of law, he was entitled to be treated as though the convictions had never occurred. The prosecutor responds that, while a full and unconditional pardon may remove all legal consequences attendant to an offense, it does not vitiate the historical fact of the conviction. Thus, the prosecutor argues, the Connecticut pardon is the functional equivalent of an expungement under MCL 780.621, of which defendant is entitled to only one. See MCL 780.624. To resolve this dispute, we must determine the legal effect of a pardon in Connecticut and whether such pardon is the functional equivalent of a Michigan expungement or something greater.
In Connecticut, the pardoning power is vested in the legislature, which has delegated the exercise of such power to the Board of Pardons. Conn Gen Stat § 18-26(a); McLaughlin v Bronson, 206 Conn 267, 271; 537 A2d 1004 (1988). Pursuant to this delegation, the Board of Pardons has “authority to grant pardons, conditioned or absolute, for any offense against the state at any time after the imposition and before or after the service of any sentence.” Conn Gen Stat *213 § 18-26(b). Where the pardon granted is absolute, the pardoned individual is entitled to have “all police and court records and records of the state’s or prosecuting attorney pertaining to such case . . . erased.” Conn Gen Stat § 54-142a(d). Thereafter, “any person [or law enforcement agency] charged with retention and control of such records,” may not disclose to anyone any information pertaining to the charge erased and, upon request of the pardoned individual, must “cause the actual physical destruction of [all court] records.”[5] Conn Gen Stat § 54-142a(e); see also Doe v Manson, 183 Conn 183, 184-185; 438 A2d 859 (1981). Although such physical destruction may not occur “until three years have elapsed from the date of the final disposition of the criminal case to which such records pertain,” upon erasure, the individual is “deemed to have never been arrested .. . with respect to the proceedings so erased and may so swear under oath.” Conn Gen Stat § 54-142a(e).
Despite the sweeping manner in which Connecticut law “erases” a conviction upon pardon, there are “a few, very limited” exceptions to the nondisclosure requirements of Conn Gen Stat § 54-142a. Doe, supra at 185. Pursuant to Conn Gen Stat § 54-142a(e), erased information may be released to the pardoned individual at any time. See, also, Conn Gen Stat § 54-142k(c) and (d). A trial court may also order disclosure of erased records to a defendant in an action for *214 false arrest arising out of the proceedings erased, or to a prosecuting attorney in connection with perjury charges alleged to have arisen from testimony elicited during the trial. Conn Gen Stat § 54-142a(f). Such information may additionally be disclosed, if requested within two years of the disposition of the case, to a victim who brings or states an intent to bring a civil suit for loss or damages relating to the offense erased. Conn Gen Stat § 54-142c(b). With respect to such suits, however, only the facts underlying the conviction, and not the conviction itself, are admissible at trial. See, e.g., State v Morowitz, 200 Conn 440, 448-451; 512 A2d 175 (1986) (purpose of § 54-142a is to insulate an individual from the consequences of the prior prosecution, not from the consequences of his prior actions'). Finally, Conn Gen Stat § 54-142m permits the disclosure of erased information between “criminal justice agenc[ies]” that have agreed “to provide services required for the administration of criminal justice,” or for “purposes of research, evaluation or statistical analysis” that would further the ends of public justice.
Given the limited nature of these exceptions, it is clear that while a pardon granted pursuant to Conn Gen Stat § 18-26 does not act to erase the conduct leading to the pardoned conviction, it nonetheless removes the legal disabilities that flow from that conviction. Thus, upon the grant of an absolute pardon, the pardoned individual is no longer considered by the law to have been “convicted” or otherwise adjudicated guilty of the pardoned crime.[6] While the circum *215 stances supporting the conviction may remain, the fact of the conviction is, in the eyes of the law, gone forever.
In contrast, an expungement under MCL 780.621 does not fully relieve an individual of the legal disabilities flowing from the conviction. For example, expungement pursuant to MCL 780.621 does not relieve a felony sex offender from the continuing duty to register pursuant to the provisions of the Sex Offenders Registration Act, MCL 28.721 et seq* *****[7] See MCL 780.622(3). More generally, the Department of State Police is required to retain a record of expunged convictions and their associated sentences, which may be accessed and used by a number of state authorities for a variety of reasons, including denial of employment or a professional license and enhancement of a sentence for a later felony conviction. MCL 780.623(2).
Given such continuing legal disabilities, we conclude that the Connecticut pardon granted defendant *216 in this matter is not akin to a Michigan expungement. Instead, it is like a gubernatorial pardon granted pursuant to Const 1963, art 5, § 14.[8] As our Supreme Court has observed, such an act of clemency “ ‘reaches both the punishment prescribed for the offense and the guilt of the offender. It releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense.’ ” People v Stickle, 156 Mich 557, 564; 121 NW 497 (1909), quoting People, ex rel Forsyth v Court of Sessions of Monroe County, 141 NY 288, 294-295; 36 NE 386 (1894). In light of the sweeping manner in which the Connecticut statutes erase a conviction upon pardon, the pardon granted defendant similarly blots out of existence his guilt, so that under the law he is considered to have never committed the pardoned offenses. Accordingly, although defendant may not be innocent in fact, the Connecticut pardon renders him innocent as a matter of law. As a result, in the eyes of the law, the only conviction that remains is defendant’s 1979 Michigan conviction of felonious assault and defendant is therefore, under the plain language of MCL 780.621(1), eligible for expungement as one “who is convicted of not more than one offense . . . .”
*217 In reaching this conclusion, we recognize that this Court has previously held that the purpose of the expungement act is “to allow one-time offenders,” i.e., those “whose records are blemished by ‘a single conviction for a single crime . . . committed on a single occasion’ ” to have their criminal records expunged. People v Grier, 239 Mich App 521, 523; 608 NW2d 821 (2000), quoting People v McCullough, 221 Mich App 253, 257; 561 NW2d 114 (1997). However, because the law does not recognize offenses for which a defendant has been pardoned, the foregoing conclusion is not inconsistent with this purpose. Moreover, this conclusion accords with the liberal construction afforded statutes that are remedial in nature. See, e.g., People v Miller, 78 Mich App 336, 343; 259 NW2d 877 (1977) (statutes that are remedial in nature should be “construefd] . . . liberally for the advancement of the remedy”).
Accordingly, we find that the trial court erred in concluding that defendant was ineligible for expungement under MCL 780.621(1). We therefore reverse the trial court’s finding that defendant was ineligible to seek expungement under MCL 780.621(1) and remand for consideration of the merits of defendant’s application under MCL 780.621(9). We do not retain jurisdiction.
Hoekstra, J., concurred.

 The offenses of which defendant was convicted — criminal mischief, assault, and three counts of larceny — stemmed from defendant’s arrest on four different occasions during the years 1975 and 1977.

 Pursuant to MCL 780.624, “[a] person may have only 1 conviction set aside under [the] act.”

 In light of the trial court’s clear holding that the setting aside of defendant’s felonious assault conviction would “violate the spirit, if not the letter” of MCL 780.621, we reject the prosecution’s claim, which has been adopted by the dissent, that denial of defendant’s petition was an exercise of the trial court’s discretion under MCL 780.621(9). As the dissent correctly notes, MCL 780.621(9) provides the trial court with discretion to grant or deny a petition for expungement. However, as recognized by this Court in People v Boulding, 160 Mich App 156, 158; 407 NW2d 613 (1986), “[t]he statute by its plain language requires a balancing of factors, specifically a determination of the ‘circumstances and behavior’ of a petitioner balanced against the ‘public welfare.’ ” Moreover, in balancing these factors, the trial court must provide “enough of a determination” for this Court “to analyze the manner in which the court’s discretion was exer *211 cised and the basis for the court’s determination.” Id. Here, despite the trial court’s statement that it was exercising its “discretion” in denying defendant’s petition, there is nothing in the trial court’s comments to indicate that it ever in fact considered defendant’s circumstances since the Michigan conviction, or the public welfare, in reaching its decision. To the contrary, given the trial court’s statement that, had the Connecticut convictions occurred in Michigan, defendant would not be “entitled” to have his conviction expunged, it is clear that the trial court grounded its decision in law, rather than discretion.

 It does not matter that these offenses were misdemeanors. “[T]he act’s language precluding relief if an applicant has been convicted of more than one offense applies to both felonies and misdemeanors.” People v Grier, 239 Mich App 521, 523; 608 NW2d 821 (2000).

 Pursuant to Conn Gen Stat § 54-142a(h), “court records” do not include “a record or transcript of the proceedings made or prepared by an official court reporter, assistant court reporter or monitor.” Neither does the statute require erasure of records extraneous to the fact of arrest and prosecution. See State v West, 192 Conn 488, 496; 472 A2d 775 (1984) (identifying information such as photographs and fingerprints are not “records” within the meaning of § 54-142a).

 See Conn OAG, 1989, No 89-28, p 4 (November 12, 1989), where, in answering the question whether a person who has been granted an absolute pardon from a felony conviction falls within the provisions of Conn *215 Gen Stat § 53a-217(a), which prohibits a person convicted of certain enumerated felonies from possessing a firearm, the Attorney General of Connecticut concluded:
[A]n individual who has received an absolute pardon has effectively had all legal disabilities associated with the crime for which he was pardoned removed. Accordingly, such an individual cannot be deemed to have been convicted of a felony for purposes of Conn Gen Stat § 53a-217(a) and could therefore carry a firearm . .. without violating this statute.
In Michigan, the Legislature has similarly exempted those who have been pardoned from the statutes prohibiting convicted felons from possessing firearms. See MCL 750.224f(4).

 Notwithstanding any constitutional impediment that may exist regarding registration under the Sex Offenders Registration Act, see Fullmer v Michigan Dep’t of State Police, 207 F Supp 2d 650 (ED Mich, 2002), MCL 780.622(3) evinces a legislative intent to preserve certain legal disabilities associated with expunged convictions.

 In Michigan, the pardoning power of the state is vested exclusively in the Governor:
The governor shall have power to grant reprieves, commutations and pardons after convictions for all offenses, except cases of impeachment, upon such conditions and limitations as he may direct, subject to procedures and regulations prescribed by law. He shall inform the legislature annually of each reprieve, commutation and pardon granted, stating reasons therefor. [Const 1963, art 5, & 14.]