**Michigan Supreme Court**
**Lansing, Michigan**

# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

PEOPLE v BUTKA

Docket No. 164598. Argued on application for leave to appeal December, 6, 2023. Decided July 22, 2024.

Stephen M. Butka pleaded no contest in the Otsego Circuit Court to one count of third-degree child abuse, MCL 750.136b(5), in exchange for the dismissal of one count of second-degree criminal sexual conduct, MCL 750.520c, and two counts of indecent exposure, MCL 750.335a. Defendant had been accused of groping his two stepdaughters' breasts and masturbating in front of them when they were between the ages of 13 and 16. In 2006, the trial court, Colin G. Hunter, J., sentenced defendant to nine months in jail and two years of probation and ordered defendant to register as a sex offender. In 2008, defendant successfully completed probation, and in 2012, he applied to have his conviction set aside. The trial court denied the application. In 2019, defendant filed a second application to set aside his conviction and also petitioned to discontinue his registration as a sex offender. At a hearing on the application, one of the victims made a statement objecting to the application, stating that she was forever scarred by defendant's actions and that allowing him to have a clean record would be unfair to her. The trial court granted defendant's motion to discontinue sex offender registration but denied his application to set aside his conviction. In considering the victim's statement, the court found that defendant should continue to have a public record but invited him to apply again to set aside his conviction in 18 months. Defendant filed a third application to set aside his conviction in February 2021. During a hearing, both victims made statements opposing the application, indicating that defendant should live with the consequences of his actions, as they must live with the consequences of his actions. The trial court found that granting the application would not be consistent with the public welfare because the victims were still deeply affected by defendant's actions. Accordingly, the court denied the application and invited defendant to reapply in three years. Defendant sought leave to appeal in the Court of Appeals (MURRAY, P.J., and SAWYER and M. J. KELLY, JJ.), which affirmed the judgment of the trial court in an unpublished per curiam opinion. Defendant sought leave to appeal in the Supreme Court, and the Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 511 Mich 865 (2023).

In an opinion by Justice BERNSTEIN, joined by Chief Justice CLEMENT and Justices CAVANAGH, WELCH, and BOLDEN, the Supreme Court, in lieu of granting leave to appeal, *held*:

When considering whether to grant a formerly convicted individual's application to set aside a conviction, the public welfare cannot be determined solely by looking to the impact of setting aside the conviction on individuals or a limited class of people.

1. When considering a motion to set aside a conviction under MCL 780.621d(13),[1] if the court determines that the circumstances and behavior of the applicant from the date of the applicant's conviction or convictions to the filing of the application warrant setting aside the conviction or convictions and that setting aside the conviction or convictions is consistent with the public welfare, the court may enter an order setting aside the conviction or convictions. The Court of Appeals relied on *People v Boulding*, 160 Mich App 156 (1986), in affirming the decision of the trial court. In *Boulding*, the Court of Appeals concluded that determining whether a petitioner's "circumstances and behavior" warranted setting aside a conviction and whether setting aside a conviction was consistent with the "public welfare" required a balancing of those factors. The *Boulding* Court erred, however, by holding that the statute implements a general balancing test of the circumstances and behavior of a petitioner against the public welfare. Rather, the statute plainly states that the circumstances and behavior of the applicant must justify setting aside the conviction *and* that setting aside the conviction must be consistent with the public welfare. The statute imposes a two-element standard in which each element must be met, and the trial court's analysis must account for each element. *Boulding* is overruled to the extent that it conflicts with this opinion.

2. "Public welfare" is not defined by the statute. It is a legal term of art that was initially added to the statute in a 1982 amendment. The contemporaneous version of *Black's Law Dictionary* (5th ed) defined the term as the "prosperity, well-being, or convenience of the public at large, or of a whole community, as distinguished from the advantage of an individual or limited class." The Court of Appeals held that the "public welfare" includes the welfare of "every member of the public, without exclusion," and therefore, the two victims in this case qualified as "the public." This conclusion disregarded the meaning of "public welfare" as a legal term of art, which expressly excludes an interpretation that the public welfare may be determined by the interests of a limited class of individuals. Certainly, the trial court did not err by hearing statements from the victims, but the welfare of two individuals is not representative of the welfare of the public at large. The victims in a case speak as individuals, not as representatives of the public as a whole. While the victim's statements in this case were relevant to the trial court's consideration of defendant's application to set aside his conviction, the statute requires a broader view of the effect of setting aside a conviction than was taken by the lower courts.

3. Under the statute, the trial court had to consider the circumstances and behavior of defendant following his conviction. The court here concluded that the circumstances and behavior of defendant weighed in favor of granting his application to set aside his conviction, given that no record evidence supported an inference that he would reoffend. Further, defendant had no criminal history before he pleaded no contest, and he had not been charged with any criminal activity since

---

[1] The relevant language appeared in former MCL 780.621(14), as amended by 2016 PA 336, when defendant filed his third application to have his conviction set aside. The statute was amended by 2021 PA 82, and the subsection at issue is now found at MCL 780.621d(13). The relevant statutory language remains the same.

completing probation. The trial court denied the application, however, because the two victims remained affected by defendant's actions. This was an insufficient basis to support the trial court's conclusion that granting defendant's application was not consistent with the public welfare. The statute cannot afford individuals who have been convicted a meaningful opportunity to set aside an eligible conviction if the public-welfare element is reduced to whether the victim of the crime supports the defendant's application.

Judgment of Court of Appeals reversed, trial court judgment denying the application to set aside conviction reversed, and case remanded to the trial court to enter an order granting the application.

Justice ZAHRA, concurring in part and dissenting in part, agreed that the trial court abused its discretion by denying defendant's application to set aside his conviction, but he disagreed with the majority's understanding of "public welfare" under the statute. Whether the interests of two individuals represented the public welfare was not relevant; rather, the question was whether the substance of the statements made by two individuals, and relied upon by the trial court, provided a sufficient basis on which to conclude that expungement was not consistent with the public welfare. In certain cases, especially those involving guilty pleas, the conviction sought to be set aside will not correspond to the nature of the offense, and the victims' statements may be highly relevant to a determination of whether expungement is "consistent with the public welfare." Specifically, victims' statements may reveal that a defendant's conduct could have supported a conviction that is not eligible to be set aside, which implicates the public welfare. However, the trial court in this case considered the victims' statements only in regard to how the victims were affected by defendant's conduct; in this context, the statements were not particularly relevant to a determination of whether expungement was consistent with the public welfare. Further, given the evidence establishing defendant's eligibility for expungement, there was very little basis to conclude that expungement was not consistent with the public welfare. Justice ZAHRA also noted that, in addition to the trial court's incorrect statement that defendant had a "felony" conviction when in fact defendant had pleaded no contest to a misdemeanor, the court's decisions created an appearance of arbitrariness given that it had waived the three-year waiting period for defendant to reapply after denying his second expungement application only to also deny defendant's third application. The trial court's decision suggested that defendant's circumstances were less advantageous than they had been previously, but there was no support in the record for this conclusion.

Justice VIVIANO, dissenting, disagreed that the trial court had abused its discretion by denying defendant's application to set aside his conviction and that the public welfare could not be determined by looking solely to the impact on the victims. He opined that the majority's conclusion that the public welfare could not be determined solely by the interests of the victims and that thus, an expungement could not be rejected based solely on the victims' objections, improperly discouraged trial judges from considering the views of those most affected by the underlying criminal activity. Additionally, Justice VIVIANO noted that judges have broad discretion under the statute, such that even if a defendant satisfies the statutory prerequisites for expungement, granting an expungement is not mandatory. In fact, the statute explicitly states that the setting aside of a conviction is a privilege and not a right. This means that the Court should recognize that trial courts have a heightened level of discretion on this issue. Moreover, the statute

indicates that victims of certain crimes have the right to notice of an expungement application, the right to appear at related proceedings, and the right to make a statement, which indicates that the Legislature intended to give victims an opportunity to provide input on these decisions. Lastly, Justice VIVIANO believed that the Court should have remanded the case to the trial court to apply its new rule rather than usurping the trial court's discretion by directing it to grant defendant's expungement application.

# OPINION

Chief Justice:
    Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 22, 2024

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                          No. 164598

STEPHEN MATTHEW BUTKA,

    Defendant-Appellant.

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

In this case, we consider the definition of the term "public welfare" as used in MCL 780.621(14), as amended by 2016 PA 336.[1] Specifically, we ask whether two victims, who made statements at a hearing to consider an application to set aside defendant's conviction,

---

[1] That version of MCL 780.621(14) was in effect when defendant filed his third application to have his conviction set aside. The statute was amended by 2021 PA 82, and the subsection at issue is now found at MCL 780.621d(13). The relevant statutory language remains the same.

amount to the "public" for purposes of the statutory provision. We disagree with the trial court and the Court of Appeals that two individuals alone amount to the public. Instead, we hold that "public" within the term "public welfare," as used in former MCL 780.621(14), refers to a community at large, as distinguished from an individual or a limited class of people. Therefore, we conclude that the Court of Appeals erred by holding that the statements of two individuals comprise the public welfare. We also conclude that the trial court abused its discretion when it denied defendant's application to set aside his conviction. Thus, we reverse the judgment of the Court of Appeals, reverse the trial court's decision to deny defendant's application to set aside his conviction, and remand to the trial court for entry of an order in accordance with MCL 780.621.

## I. FACTS AND PROCEEDINGS

Defendant was accused of groping his two stepdaughters' breasts and masturbating in their presence when both girls were between 13 and 16 years old. Defendant was charged with one count of second-degree criminal sexual conduct, MCL 750.520c, and two counts of indecent exposure, MCL 750.335a. Defendant pleaded no contest to one count of third-degree child abuse, MCL 750.136b(5), in exchange for the dismissal of the original charges. Defendant had no prior criminal history. The trial court sentenced defendant to nine months in jail and two years of probation on February 21, 2006. The trial court also required that defendant register as a sex offender. On February 7, 2008, defendant successfully completed probation. He has not been charged with any criminal activity since completing probation.

2

On September 21, 2012, defendant applied to have his third-degree child abuse conviction set aside. Relevant to this appeal, the statute grants a trial court discretion to set aside an eligible conviction, often colloquially referred to as granting an "expungement," if the circumstances and behavior of the applicant since the date of the conviction warrant setting aside the conviction and doing so would be consistent with the public welfare. MCL 780.621(14). The two victims submitted written statements objecting to defendant's application, and the trial court denied the application. Defendant did not appeal this ruling. Defendant filed a second application to set aside his conviction on May 6, 2019. He concurrently petitioned to discontinue sex offender registration. See MCL 28.728c. Defendant supported his application with polygraph reports from 2004 and 2005, both of which indicated that defendant showed no signs of deception in denying the abuse. Defendant also attached three psychological assessments—one performed in 2004, another in 2012, and the last in 2018. Each assessment was performed by a different medical professional, and each assessment indicated that defendant posed a low risk of recidivism. The trial court held a hearing, during which one of the victims made a statement. She explained that she was forever scarred by defendant's actions and that it would be unfair for defendant to have a clean record while she must continue to suffer for the rest of her life. Relying on the victim's statement, the prosecution argued that it would not be "consistent with the public welfare to erase crimes when [the] victims are still so emotionally impacted by it."

During the hearing, defense counsel informed the trial court that defendant had been convicted of a two-year misdemeanor. But concerningly, the trial court shortly thereafter

inaccurately stated that defendant had been convicted of a felony.[2] More substantively, the trial court found that defendant's likelihood of recidivism was extremely low and that defendant was no longer a threat to the two victims or to anyone else in the public. Accordingly, the trial court granted defendant's motion to discontinue sex offender registration. However, the trial court denied defendant's application to set aside his conviction. The trial court acknowledged that it could not deny the application based solely on the nature of the offense. See *People v Rosen*, 201 Mich App 621, 623; 506 NW2d 609 (1993) ("The nature of the offense itself does not preclude the setting aside of an offender's conviction. That reason, standing alone, is insufficient to warrant denial of an application to set aside a conviction."). But, in considering the victims' statements, the trial court found that defendant should continue to have a public record. Accordingly, the trial court, relying on its own discretion, denied defendant's application to set aside his conviction and entered an order to this effect. However, the trial court invited defendant to file a new application in 18 months, stating that it eventually intended to grant an application to set aside defendant's conviction. By inviting defendant to file a new application in 18 months, the trial court waived the statutory three-year waiting period. MCL 780.621d(5) ("If a petition under this act is denied by the convicting court, a person shall not file another petition concerning the same conviction or convictions with the convicting court until 3

---

[2] Third-degree child abuse is now a felony and has been since the statute was amended in 2008. But when defendant entered his plea, third-degree child abuse was a misdemeanor. 1999 PA 273. Concerningly, even now the prosecution's supplemental brief states that "[o]n January 03, 2006, pursuant to a plea agreement, Appellant entered a plea of *nolo contendere* to an Added Count 4, Child Abuse-Third Degree, a two-year felony contrary to MCL 750.136b(4)."

years after the date the convicting court denies the previous petition, unless the court specifies an earlier date for filing another petition in the order denying the petition.").

Defendant filed a third application to set aside his conviction on February 9, 2021. Both victims again opposed his application. The trial court held a hearing, during which the trial court once more erroneously referred to defendant's conviction as a felony conviction.

At this hearing, each victim made a statement. Each victim averred that defendant should live with the consequences of his actions, just as they are forced to live with the consequences of his actions. Defendant also testified, explaining that while he empathized with the victims, it was "their prerogative . . . to move on or not to move on." The trial court considered defendant's postconviction behavior and noted that defendant had done nothing since his conviction to indicate to the court that he would be a risk to either victim or to anyone else. The trial court found that this weighed in favor of setting aside defendant's conviction. However, citing the victims' statements that they were still deeply impacted by defendant's actions, the trial court found that granting defendant's application would not be consistent with the public welfare. Accordingly, the trial court denied defendant's application to set aside his conviction and invited defendant to refile in three years. Defendant filed an application for leave in the Court of Appeals, which the panel denied for a lack of merit. Defendant then sought leave to appeal in this Court, and in lieu of granting leave to appeal, this Court remanded to the Court of Appeals for consideration as on leave granted. *People v Butka*, 508 Mich 966 (2021).

On remand, the Court of Appeals affirmed the judgment of the trial court in an unpublished per curiam opinion. *People v Butka*, unpublished per curiam opinion of the

5

Court of Appeals, issued May 19, 2022 (Docket No. 356977). The Court of Appeals first explained that, under MCL 780.621(14), as amended by 2016 PA 336, "the trial court must balance the circumstances and behavior of the applicant against the public welfare." *Id*. at 4, citing *People v Boulding*, 160 Mich App 156, 158; 407 NW2d 613 (1986). In considering the definition of public welfare, the Court of Appeals concluded that "the public welfare includes every member of the public, without exclusion." *Butka*, unpub op at 5. Therefore, the Court of Appeals found that the trial court properly exercised its discretion when it determined that setting aside defendant's conviction was not consistent with the public welfare given the ongoing negative impact of defendant's actions on his victims. *Id*. at 5-6.

Defendant sought leave to appeal in this Court, and in lieu of granting leave, we ordered oral argument on the application. *People v Butka*, 511 Mich 865 (2023).

## II. STANDARD OF REVIEW AND PRINCIPLES OF STATUTORY INTERPRETATION

A trial court has discretion to grant or deny an application to set aside a conviction. MCL 780.621d(13). Accordingly, we review the trial court's decision for an abuse of discretion. "[A]n abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "When the trial court selects one of these principled outcomes, the trial court has not abused its discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment." *Id*. "A trial court necessarily abuses its discretion when it makes an error of law." *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

6

Statutory interpretation is "a question of law that we review de novo." *American Civil Liberties Union of Mich v Calhoun Co Sheriff's Office*, 509 Mich 1, 8; 983 NW2d 300 (2022). "The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language." *Id.* (quotation marks and citations omitted). "When a statute specifically defines a given term, that definition alone controls." *Kuznar v Raksha Corp*, 481 Mich 169, 176; 750 NW2d 121 (2008). On the other hand, when "terms are not expressly defined anywhere in the statute, they must be interpreted on the basis of their ordinary meaning and the context in which they are used." *People v Zajaczkowski*, 493 Mich 6, 13; 825 NW2d 554 (2012). Additionally, when a term is not defined in a statute, the dictionary definition of the term may be consulted or examined because this assists the goal of construing undefined terms in accordance with their ordinary and generally accepted meanings. *People v Lewis*, 302 Mich App 338, 342; 839 NW2d 37 (2013). "A legal term of art, however, must be construed in accordance with its peculiar and appropriate legal meaning." *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008). When we consider a legal term of art, "[c]ourts should ordinarily use a dictionary that is contemporaneous with the statute's enactment." *Sanford v Michigan*, 506 Mich 10, 21 n 19; 954 NW2d 82 (2020), citing *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 563 n 58; 886 NW2d 113 (2016).

## III. ANALYSIS

Defendant filed his motion to set aside his conviction under former MCL 780.621(14), which provided:

> If the court determines that the circumstances and behavior of an applicant under subsection (1) or (4), from the date of the applicant's

7

conviction or convictions to the filing of the application warrant setting aside the conviction or convictions, and that setting aside the conviction or convictions is consistent with the public welfare, the court may enter an order setting aside the conviction or convictions.

This Court has never before interpreted this statutory section. We take this opportunity to clarify the statutory meaning to better guide trial courts when considering an application to set aside an eligible conviction.

We first note that the Court of Appeals relied on *Boulding* when considering whether the trial court "balance[d] the circumstances and behavior of the applicant against the public welfare." *Butka*, unpub op at 4, citing *Boulding*, 160 Mich App at 158. In *Boulding*, the Court of Appeals opined that "[t]he statute by its plain language requires a balancing of factors, specifically a determination of the 'circumstances and behavior' of a petitioner balanced against the 'public welfare.' " *Boulding*, 160 Mich App at 158. The *Boulding* Court erred by holding that the statute implements a *general* balancing test of the two elements against one another. Instead, the statute plainly states that the circumstances and behavior of the applicant must justify setting aside the conviction *and* that setting aside the conviction must be consistent with the public welfare. This language indicates a two-element standard in which each element *must* be met. Each element is separate and distinct, and a trial court's discretionary analysis must account for each element. We overturn *Boulding* to the extent that it conflicts with this opinion.

Turning to the element in dispute in this case, we examine the meaning of "public welfare" as used in former MCL 780.621(14). The statute does not define public welfare. Because the statute fails to define the term, we may turn to dictionaries to inform our analysis. *Lewis*, 302 Mich App at 342. Lay dictionaries do not define "public welfare" as

8

it is used in the applicable context.[3] We therefore conclude that "public welfare" is a legal term of art, given that it is "a technical word or phrase that has acquired a particular and appropriate meaning in the law." *People v Law*, 459 Mich 419, 425 n 8; 591 NW2d 20 (1999). See also MCL 8.3a. Accordingly, we consult a legal-dictionary definition that was contemporaneous with the enactment of former MCL 780.621(14). *Sanford*, 506 Mich at 21 n 19.

The "consistent with the public welfare" requirement was initially added to MCL 780.621 as part of Subsection (9) in a 1982 amendment. See MCL 780.621(9), as amended by 1982 PA 495. The fifth edition of *Black's Law Dictionary*, published in 1979, provides the legal definition that was contemporaneous with the public-welfare requirement. *Black's Law Dictionary* (5th ed) defines the "public welfare" as:

> The prosperity, well-being, or convenience of the public at large, or of a whole community, as distinguished from the advantage of an individual or limited class. It embraces the primary social interests of safety, order, morals, economic interest, and non-material and political interests.[4]

---

[3] For example, neither *Random House Webster's College Dictionary* (2001) nor *Merriam Webster's Collegiate Dictionary* (11th ed) defines "public welfare."

[4] The Court of Appeals relied on the definition provided by the eighth edition of *Black's Law Dictionary*, published in 2004, which defines "public welfare" as " '[a] society's well-being in matters of health, safety, order, morality, economics, and politics.' " *Butka*, unpub op at 5, quoting *Black's Law Dictionary* (8th ed), p 1625. As noted, "[c]ourts should ordinarily use a dictionary that is contemporaneous with the statute's enactment." *Sanford*, 506 Mich at 21 n 19, citing *Ronnisch Constr Group*, 499 Mich at 563 n 58. In any event, the definitions are largely similar, as both versions refer to the public welfare in regard to the well-being of a larger community of persons. See *Black's Law Dictionary* (11th ed) (defining "society," in part, as a "community of people" or "[a]n association or company of persons").

9

In this case, the Court of Appeals opined that the public welfare necessarily includes "every member of the public, without exclusion." *Butka*, unpub op at 5. The Court of Appeals therefore concluded that the two victims qualified as the public. The Court of Appeals was not technically wrong in its assertion that the public is comprised of each individual person within it, but the assertion that these two victims make up the public disregards the legal term of art, which expressly disavows an interpretation that allows the public welfare to be determined by the interests of such a limited class of individuals.[5]

To be clear, the trial court did not err by hearing statements from the victims.[6] But, typically, two individuals do not represent the "prosperity, well-being, or convenience of the public at large[.]" *Black's Law Dictionary* (5th ed). Stated differently, while granting defendant's application to set aside his conviction may not have been consistent with the welfare of the victims, the lower courts did not explain why granting defendant's

---

[5] There are undoubtedly circumstances in which statements from individuals can provide a trial court context to determine whether a formerly convicted person poses a threat to the public welfare. But here, the trial court considered only the individual feelings and sensitivities of the two victims and on this basis determined that granting defendant's application to set aside the conviction was not consistent with the public welfare. Given this error by the trial court and the Court of Appeals, we respectfully disagree with Justice ZAHRA's contention that whether two individuals comprise the public welfare is not relevant to this dispute.

[6] We note that MCL 780.621 does not require the trial court to consider a victim's impact statement when determining whether to set aside a conviction. That said, we agree with the panel that consideration of a victim's impact statement in this context is not an abuse of discretion. The panel reasoned: "[T]here is . . . no statutory language *precluding* a court from considering a victim impact statement when balancing the circumstances and behavior of the applicant against the public welfare. It is, therefore, of no consequence that the court is not expressly required to consider victim impact statements. Instead, statements by a victim are a factor that the court may consider when weighing whether setting aside an applicant's conviction is consistent with the public welfare." *Butka*, unpub op at 4.

application to set aside his conviction would not be consistent with the broader *public's* welfare.

Statements from victims, such as those made here, speak to the impact of a past criminal act or acts on those victims. While their statements are undoubtedly important, the victims speak as individuals, not as representatives of the public as a whole. However, to set aside a conviction, courts must look beyond the crime itself to circumstances that occur after a defendant's conviction, both in terms of the defendant's individual circumstances and the forward-looking impact of setting aside a conviction on the public as a whole. While the victims' statements here were relevant to the trial court's consideration of defendant's application to set aside his conviction, former MCL 780.621(14) requires a broader view of the impact of setting aside a conviction than was taken by the lower courts.

## IV. APPLICATION

As previously noted, we review a trial court's decision on an application to set aside a conviction for an abuse of discretion. We hold that the trial court abused its discretion in this case when it denied defendant's third application to set aside his conviction.[7]

---

[7] We agree with Justice VIVIANO that the statute provides a trial court wide discretion to either grant or deny a formerly convicted person's application to set aside a conviction. It is also true that a formerly convicted person is not entitled to have a conviction set aside. However, there is no indication that anything other than the typical abuse of discretion standard ought to apply here. No party has asked this Court to adopt a heightened abuse of discretion standard, nor has the Legislature made clear an intent to implement a heightened standard of review. Proceeding under the typical abuse of discretion standard, we disagree with Justice VIVIANO's contention that we have usurped the trial court's discretion by remanding this case back to the trial court for entry of an order setting aside defendant's conviction. Here, the trial court provided every indication that it intended to grant defendant's application to set aside his conviction but refrained from granting the application because of the victims' expressed ongoing emotional distress from the crime.

11

To start, we wholeheartedly agree with Justice ZAHRA's comments that there are troubling aspects of this case that support the conclusion that the trial court abused its discretion in denying defendant's application to set aside his conviction. The trial court, on more than one occasion, erroneously stated that defendant had a felony conviction when he in fact pleaded to a misdemeanor. And the trial court's waiving of the three-year waiting period, only to again deny defendant's application to set aside his conviction without any new circumstances that would merit a denial of the application, creates an impression of arbitrariness. Turning now to the statutory elements necessary to support an application to set aside a conviction, we first consider the "circumstances and behavior" of the applicant. MCL 780.621(14). Defendant was convicted in 2003 and successfully completed probation in 2008. The trial court concluded that the "circumstances and behavior" of defendant weighed in favor of granting his application to set aside his conviction, as no record evidence supported an inference that defendant would pose a risk of reoffending. In fact, when considering the victims' statements, the trial court explicitly acknowledged that the victims' statements did not allege any postconviction circumstances that weighed against granting defendant's application to set aside his conviction. Indeed, defendant had

According to the trial court, setting aside defendant's conviction was not consistent with the public welfare given the victims' ongoing emotional distress. A review of the record demonstrates that this misinterpretation of the law was the sole reason why the trial court denied defendant's applications to set aside his conviction. Given the fact that we have corrected this misinterpretation, and, considering that the trial court expressed its intent to eventually grant defendant's application while also removing him from the SORA registry, we see no reason why, on this record, a remand to the trial court to reconsider the application is necessary.

12

no criminal history prior to the instant plea, and he has not been charged with any other criminal activity since completing his probationary period.

We are also persuaded by the fact that, when granting defendant's motion to discontinue SORA registration in 2019, the trial court found that defendant did not pose a high risk of recidivism or a danger to the community. We acknowledge that a court is not required to set aside a conviction simply because it grants a petition to discontinue SORA registration. But the trial court's findings regarding defendant's petition to discontinue SORA registration appear to directly support defendant's request to set aside his conviction. Accordingly, we find that the "circumstances and behavior" of this defendant warranted granting defendant's application to set aside his conviction.

The trial court, however, ultimately concluded that setting aside defendant's conviction would not be consistent with the public welfare because the two victims remained affected by defendant's actions. Although the two victims were understandably unsupportive of defendant's request to set aside his conviction, we reiterate that the public welfare must consist of more than the subjective opinions of the two victims. Without more, we conclude that their objections are insufficient to support the trial court's conclusion that granting defendant's application to set aside his conviction was not consistent with the public welfare. Accordingly, the trial court abused its discretion when it concluded that granting defendant's application to set aside his conviction would not be consistent with the public welfare.

This result, we believe, comports with the goal of legislation that allows formerly convicted individuals an opportunity to set aside a conviction. While no express statement of purpose has been added to Michigan's statutory scheme, legal scholars have explained

13

that such legislation permits formerly convicted individuals, under certain circumstances, an opportunity to eliminate the collateral consequences of their former mistakes and successfully reenter into society.[8]  As explained, defendant has satisfied the statutory criteria to set aside his conviction.  The lower courts' interpretation of the "public welfare" element creates an insurmountable obstacle that frustrates the underlying purpose of allowing formerly convicted individuals a meaningful opportunity to set aside an eligible conviction.  The statute cannot afford formerly convicted individuals a meaningful opportunity to set aside an eligible conviction if the public-welfare element is reduced to whether the victim of a crime supports the defendant's application.  Instead, the views of such a limited class of individuals would in many instances operate as an effective veto for an otherwise meritorious request to set aside a past conviction.

---

[8]  See, e.g., Murray, *Unstitching Scarlet Letters?: Prosecutorial Discretion and Expungement*, 86 Fordham L Rev 2821, 2838-2839 (2018) ("Expungement law has been developing for nearly eight decades.  Its primary focus is restoration; the elimination or sealing of a criminal record removes information from the public's reach or eyesight while permitting the ex-offender to carve a new identity—or at least to cover up the branding that has occurred so that only a select few, in limited circumstances, can unveil it."); Stewart, *Bouncing Back, Moving Forward: Expungement Opens a Door to the Future*, 45 Wyo Law 16, 17 (Feb 2022) ("Given the negative repercussions that accompany a criminal conviction, expungements are one of the most powerful yet underutilized tools available to those seeking to neutralize the consequences of a criminal record.").

Such collateral consequences can make it more difficult to find suitable housing and lawful employment, which "can pose significant barriers to successful reentry into society. And poor prospects for a secure living situation and steady work bring a heightened risk of recidivism, starting the cycle of engagement with the justice system all over again." National Institute of Justice, *Expungement: Criminal Records as Reentry Barriers*, Corrections Today (September/October 2022), p 14, available at <https://nij.ojp.gov/topics/articles/expungement-criminal-records-reentry-barriers> (accessed April 2, 2024) [https://perma.cc/GQD9-2UJF].

For these reasons, we hold that the trial court abused its discretion when it denied defendant's application to set aside his conviction.

## V. CONCLUSION

We conclude that the Court of Appeals erred by holding that the negative impact of setting aside defendant's conviction on the two victims qualified as a negative impact on the public welfare. Instead, we hold that the public welfare cannot be determined by looking solely to the impact of setting aside a conviction on individuals or a limited class of people. We further conclude that the trial court abused its discretion when it denied defendant's application to set aside his conviction because no record evidence supported a finding that either the "circumstances and behavior" of defendant or the "public welfare" weighed in favor of denying defendant's application. Accordingly, we reverse the judgment of the Court of Appeals, reverse the trial court's decision to deny defendant's application to set aside his conviction, and remand to the trial court for entry of an order setting aside defendant's 2003 conviction for third-degree child abuse. We do not retain jurisdiction.

Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

15

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                     No. 164598

STEPHEN MATTHEW BUTKA,

      Defendant-Appellant.

_____

ZAHRA, J. (*concurring in part and dissenting in part*).

      I agree with my colleagues in the majority "that the trial court abused its discretion when it denied defendant's application to set aside his conviction." I must, however, disagree with majority's understanding of "public welfare" as used in former MCL 780.621(14).[1] The majority holds

> that "public" within the term "public welfare," as used in former MCL 780.621(14), refers to a community at large, as distinguished from an individual or a limited class of people. Therefore, we conclude that the Court of Appeals erred by holding that the statements of two individuals comprise the public welfare.

      Respectfully, whether two individuals compose the public welfare is not relevant. What is relevant is whether the substance of the statements made by the two individuals and relied upon by the trial court provides a sufficient basis to conclude that expungement is not consistent with public welfare.

_____

[1] MCL 780.281(14), as amended by 2016 PA 336.

To properly frame this question, it must be acknowledged that the Legislature has enumerated which convictions are eligible for expungement and those which are not eligible for expungement. In doing so, the Legislature presumably has "embrace[d] the primary social interests of safety, order, morals, economic interest, and non-material and political interests."[2]

However, in many cases, particularly those involving guilty pleas, the conviction sought to be set aside will not correspond to the nature of the offense committed. In those circumstances, statements from the victims regarding the nature of the offense committed, as opposed to the elements of the conviction, may be highly relevant to whether expungement is "consistent with the public welfare." These statements may reveal that a defendant's conduct could have supported a conviction that is not eligible to be set aside, which plainly implicates whether setting aside the conviction is consistent with the public welfare.

Here, the trial court did not consider the victims' statements for the purpose of ascertaining whether there was conduct underlying defendant's conviction such that it would not be "consistent with public welfare" to set aside the conviction.[3] Rather, the court

---

[2] *Black's Law Dictionary* (5th ed) (defining "the public welfare").

[3] Here, the trial court acknowledged that defendant had been charged with second-degree criminal sexual conduct and that the prosecution offered defendant a reduced plea, with the court surmising that "a component of the decision making to offer that reduced plea [was] that [defendant] had been found by a polygraph examiner to have not been deceptive when [defendant] denied any criminal sexual touching." And while the victims stated that defendant had touched their breasts, the court at no point indicated it relied on the victims' statements that defendant had touched their breasts. This is significant because absent this finding, there is no basis to conclude that defendant's conduct was any more egregious than third-degree child abuse, the misdemeanor to which he pleaded no contest.

considered the victims' statements only in regard to how the victims were affected by defendant's conduct. These statements are far less relevant to "public welfare" when considered in the context of the statute. Along these lines, I do agree with the majority's observations that relying on these statements alone "frustrates the underlying purpose of allowing formerly convicted individuals a meaningful opportunity to set aside an eligible conviction. The statute cannot afford formerly convicted individuals a meaningful opportunity to set aside an eligible conviction if the public-welfare element is reduced to whether the victim of a crime supports the defendant's application."

Accordingly, given the overwhelming amount of relevant evidence establishing that defendant is eligible for expungement and that expungement is warranted, and given that the trial court only relied upon marginally relevant evidence that the victims remain affected by defendant's conduct, there is very little basis to conclude that expungement was not "consistent with the public welfare."

A trial court's decision to grant or deny an application to set aside a conviction is reviewed for an abuse of discretion.[4] After complete review of the lower court record, I conclude that the trial court's decision to deny the application is not within the range of principled outcomes. I acknowledge that "[t]he setting aside of a conviction or convictions under this act is a privilege and conditional and is not a right."[5] This language, however, does not provide additional discretion to the trial court when deciding whether to grant or deny an application to set aside a conviction. Rather, this language makes clear that the

---

[4] See *People v Van Heck*, 252 Mich App 207, 210 n 3; 651 NW2d 174 (2002); former MCL 780.621(14).

[5] MCL 780.621(15), as amended by 2016 PA 336.

3

Legislature may deem some convictions no longer eligible for expungement or impose additional requirements on an applicant even while their application is pending. The trial court's adjudication of this matter is exceedingly difficult to reconcile. Defendant has no criminal history other than this conviction of third-degree child abuse in 2006 stemming from a *nolo contendere* plea, which at the time was a two-year misdemeanor. He entered the plea after agreeing to release his parental rights. There was no sentence agreement, and defendant ultimately served 90 days in jail and was placed on the sex-offender registry. Defendant's sentence was on the higher side, since "[i]n 2006, 167 offenders were convicted of third-degree child abuse. Eleven of these offenders were sentenced to prison, 129 to probation, 25 to jail, and two to another type of sentence."[6] He was successfully released from his two-year probationary term, and he has not been charged or convicted of any crime to date.

Defendant was eligible to file a motion to set aside his conviction when he first sought relief in 2012. After the victims submitted written objections, the predecessor trial court denied the application in an order entered on January 10, 2013. Defendant did not pursue an appeal of this ruling. Defendant filed a second application to set aside his conviction on May 6, 2019, with the current trial court. He also filed a concurrent petition to discontinue sex-offender registration. The court first addressed the motion to discontinue sex-offender registration and considered the relevant factors under MCL 28.728c(11). The court found the likelihood of recidivism to be "extremely low" because

---

[6] Senate Legislative Analysis, SB 158, SB 760, HB 4872, HB 4873 (February 13, 2009), p 4, available at <https://www.legislature.mi.gov/documents/2007-2008/billanalysis/Senate/pdf/2007-SFA-0158-N.pdf> [https://perma.cc/6VMS-G7XS].

4

"that's what all of the recommendations in this case have shown." It also determined that defendant is "no longer a threat to [the] victims or anyone else in the public . . . ." Accordingly, it granted defendant's motion to discontinue sex-offender registration. As for the expungement motion, the court determined that defendant met the eligibility criteria set by statute. It held, however, that while it could not deny the motion based solely on the offense itself, "what I do have to take into account is any statement offered by [the two] victim[s] of the crime . . . ." The trial court held that defendant could file a new motion to set aside his conviction in 18 months, explaining:

> That total amount of time then, from the time you were convicted in 2006 until I allow you to file that new petition, would be over 15 years. That time period would [coincide] with the time that you were originally required to be registered as a sex offender, it gives a date of finality for you, if otherwise I find that your circumstances still are . . . the same, that you should be able to have this conviction set aside.

Defendant refiled his application *in propria persona* on February 9, 2021. The same trial court again heard the same victims' statements. The court determined that it was not yet ready to set aside defendant's conviction. The court stated that "the most important determination I need to make is that it['s] consistent with public welfare to grant you the privilege." The court explained that this "was the most difficult aspect of the decision back in August of 2019 for this Court and it remains the most difficult decision to the Court here in 2021." The court concluded that this factor weighed against expungement because "the public welfare includes [the victims]. It does not only include the local Otsego County area . . . ." After denying the application, the trial court invited defendant to reapply in three years.

Given the trial court's assurance to defendant in 2019 of "a date of finality for you, if otherwise I find that your circumstances still are . . . the same, that you should be able to have this conviction set aside," the only principled reason to depart from this view would be some change in circumstances. But defendant's circumstances in 2021 only provided the court with additional reason to grant the motion.

In addition, there are other troubling aspects of the trial court's handling of the matter. For instance, at the August 16, 2019 hearing to set aside defendant's conviction and to be removed from the sex registry, defendant's counsel expressly informed the trial court that defendant was convicted of a two-year misdemeanor. Yet, the court shortly thereafter stated that defendant had been convicted of a felony.

At the subsequent April 6, 2021 hearing to set aside defendant's conviction, the trial court again erroneously referred to defendant's "felony" conviction. In 2008, the Legislature amended the statute prohibiting third-degree child abuse, some two years after defendant's plea, such that third-degree child abuse was elevated from a two-year misdemeanor to a two-year felony.[7] Even to date, the prosecution's supplemental brief states that "[o]n January 03, 2006, pursuant to a plea agreement, Appellant entered a plea of *nolo contendere* to an Added Count 4, Child Abuse-Third Degree, a two-year felony contrary to MCL 750.136b(4)." The Michigan State Police's record of criminal history reflects that defendant has only been convicted of this single misdemeanor. Accordingly, defendant is not a felon and has only a single misdemeanor, albeit a "serious" misdemeanor, on his record.

---

[7] See 2008 PA 577.

6

Nonetheless, the record reveals that the trial court, despite having been told otherwise, treated defendant as a felon. And while the prosecution points out that defendant has denied responsibility, defendant has provided evidence that he passed a polygraph, administered by the state police in 2004, in relation to his offense. He also provided a litany of evidence from experts and individuals supporting his claim to relief.

In my view, the trial court's decisions were not only based on a misunderstanding of defendant's criminal history but also created an appearance of arbitrariness. The predecessor trial court denied defendant's application. Defendant dutifully waited the three-year period and filed again. The current trial court exercised its discretion by denying the application but agreed to waive the three-year waiting period and invited defendant to reapply after 18 months. Following the court's directive, after waiting 18 months, defendant filed a third time, only to have the court deny his application and then inexplicably require defendant to wait three years instead of the 18 months that it had previously required before allowing defendant to refile. The court's decision suggests that defendant's circumstances were less advantageous than they had previously been. But there is no basis for this conclusion in the record. For these reasons, I conclude that the trial court's decision was simply not within the range of principled outcomes.


Brian K. Zahra


7

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v                                           No. 164598

STEPHEN MATTHEW BUTKA,

       Defendant-Appellant.

_____

VIVIANO, J. (*dissenting*).

I disagree with the majority's conclusion that the trial court abused its discretion by denying defendant's application to set aside his conviction. Under the language of the statute, the trial court has broad discretion in this area. In addition, I disagree with the majority's holding that the "public welfare" cannot be determined by looking solely to the impact of setting aside a conviction on the victims. But even if I agreed, I cannot go along with the majority's inexplicable decision to entirely usurp the trial court's discretion by granting relief in this case instead of just announcing its new rule and then remanding this case so the trial court can apply it.

At all times relevant to this case, MCL 780.621, the statute governing applications to set aside convictions, stated, in relevant part:

> (14) If the court determines that the circumstances and behavior of an applicant under section (1) or (4), from the date of the applicant's conviction or convictions to the filing of the application warrant setting aside the conviction or convictions, and that setting aside the conviction or convictions

is consistent with the public welfare, the court may enter an order setting aside the conviction or convictions.[1]

At the hearing on defendant's most recent application to set aside his conviction, the trial court found that defendant's postconviction circumstances and behavior weighed in favor of expungement but that granting the application was not "consistent with public welfare" and therefore weighed against expungement. The trial court explained:

> [I]n this particular case I don't find that it's in the public welfare to grant you the privilege. I instead agree with [the victims] . . . that when they are still so deeply affected by your actions, even though it's been 15 years, it would not be fair to them as victims of this crime which they clearly are and I've already found in our last hearing to grant you the benefit of essentially being able to wipe the slate clean without being able to do the same thing for them.

Defendant appealed, arguing that a determination of the "public welfare" should be limited to the consideration of the public at large rather than particular individuals. The Court of Appeals rejected that argument, reasoning that because the definition of "public welfare" does not exclude any members of the public, the trial court was free to consider the victims' statements. *People v Butka*, unpublished per curiam opinion of the Court of Appeals, issued May 19, 2022 (Docket No. 356977), p 5, quoting *Black's Law Dictionary* (8th deluxe ed), p 1625 (defining the phrase to mean "[a] society's well-being in matters of health, safety, order, morality, economics, and politics").

Citing an earlier edition of *Black's Law Dictionary*, the majority arrives at a similar definition of "public welfare": " 'The prosperity, well-being, or convenience of the public at large, or of a whole community, as distinguished from the advantage of an individual or

---

[1] MCL 780.621(14), as amended by 2016 PA 336. 2020 PA 190 placed this provision in the newly created MCL 780.621d(13), but the language of the provision remained unchanged.

2

limited class.' " See *ante* at 9, quoting *Black's Law Dictionary* (5th ed). From there, the majority concludes that the public welfare cannot be determined by the interests of "such a limited class of individuals" as the victims in this case. In essence, the majority holds that an expungement cannot be rejected based solely on a victim's objections. That rule, in my view, improperly discourages trial judges from considering the views of those most affected by the underlying criminal activity. I do not believe that by utilizing such a broad term in the statute, the Legislature intended to restrict the trial court's discretion in this fashion.

As the majority correctly states, the decision whether to grant or deny an application to set aside a conviction is within the trial court's discretion, and a trial judge's decision will not be overturned on appeal unless there is an abuse of discretion. The plain text of the statute gives the trial judge very broad discretion. It provides that even if a defendant satisfies the statutory prerequisites for an expungement, the granting of an expungement is not mandatory. See former MCL 780.621(14) (providing that "the court *may* enter an order setting aside the conviction") (emphasis added). The term "may" is permissive, while the term "shall" (or "must") is mandatory. *In re Bail Bond Forfeiture*, 496 Mich 320, 327-328; 852 NW2d 747 (2014). Use of the word "may" means the trial court retains some discretion as to whether to set aside the conviction even if the statutory prerequisites are met. See *Moore v Buchko*, 379 Mich 624, 641; 154 NW2d 437 (1967) (explaining that the use of "may" demonstrates legislative intent to leave the final decision on a matter to the discretion of the judge).

3

And, if any doubt remained, the statute makes it crystal clear that a defendant has no right or entitlement to an expungement. Former MCL 780.621(15)[2] (now MCL 780.621d(14)) establishes that "[t]he setting aside of a conviction or convictions under this act is a privilege and conditional and is not a right." In his partial dissent, Justice ZAHRA contends that this language "does not provide additional discretion to the trial court when deciding whether to grant or deny an application to set aside a conviction" but merely "makes clear that the Legislature may deem some convictions no longer eligible for expungement or impose additional requirements on an applicant even while their application is pending." *Ante* at 3-4. It is true that the Court of Appeals has held that this language has been the basis for applying amendments of the expungement statute retroactively. See, e.g., *People v Link*, 225 Mich App 211; 570 NW2d 297 (1997). But I do not believe this is the sole impact of the language. Instead, I believe it means that we should recognize that the trial court has a heightened level of discretion in this area, beyond that given under our "default abuse of discretion standard" that the majority applies. See *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).[3]

---

[2] MCL 780.621(15), as amended by 2016 PA 336.

[3] That " 'standard acknowledges that there will be circumstances in which there will be no single correct outcome' " and recognizes that " 'there will be more than one reasonable and principled outcome.' " *Id*., quoting *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Under the default standard, only if the trial court selects an outcome outside of the range of " 'principled outcomes' " may an appellate court not " 'defer to the trial court's judgment.' " *Maldonado*, 476 Mich at 388, quoting *Babcock*, 469 Mich at 269. But there is not a single abuse-of-discretion standard. Davis, *Standards of Review: Judicial Review of Discretionary Decisionmaking*, 2 J App Prac & Process 47, 77 (2000) ("Clearly there is no such thing as *one* abuse of discretion standard. It is at most a useful generic term. Even within review of discretionary calls (or perhaps because sometimes different types of calls have a varying amount of real judgment to them), this standard of review more accurately describes a *range* of appellate responses."). Indeed, the existence of a "default" abuse-of-

4

But even under the abuse-of-discretion standard applied by the majority, defendant is not entitled to relief. The majority's holding conflicts with the provision of the act that expressly gives crime victims a right to provide input on whether the trial court should grant an expungement application. In particular, former MCL 780.621(11), now found in MCL 780.621d(10), provides that the victim of an assaultive crime or serious misdemeanor has (1) the right to receive notice of an expungement application, (2) "the right to appear at any proceeding under [the] act concerning that conviction," and (3) the right "to make a written or oral statement." These rights would serve little, if any, purpose if, as the majority

---

discretion standard demonstrates that, under Michigan law, *Babcock*'s standard is not necessarily used in all instances in which a trial court's decision is reviewed for an abuse of discretion. See *Shulick v Richards*, 273 Mich App 320, 325; 729 NW2d 533 (2006). A different abuse-of-discretion standard will apply if "the law instructs otherwise." *Id*. at 324-325.

Prior to *Babcock*, appellate courts would only reverse a trial court's decision if it was " 'so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' " *Babcock*, 469 Mich at 266, quoting *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959). *Babcock* described *Spalding*'s standard as "the utmost level of deference." *Babcock*, 469 Mich at 266. Although *Spalding*'s standard is not the default abuse-of-discretion standard, our appellate courts have continued to apply it in certain contexts on the basis of the language in the statute at issue. See, e.g., *Shulick*, 273 Mich App at 325; *Maier v Maier*, 311 Mich App 218, 222; 874 NW2d 725 (2015). Additionally, in *Maldonado* and other cases, we have used the phrase " 'clear abuse of discretion.' " See, e.g., *Maldonado*, 476 Mich at 388, quoting *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997); *Orcutt v White*, 224 Mich 656, 657; 195 NW 420 (1923); *People v Doss*, 406 Mich 90, 101; 276 NW2d 9 (1979). Yet, other than when quoting the standard, *Maldonado* never discussed what function "clear" has in the standard. Thus, there is a question as to what difference, if any, there is between review for an "abuse of discretion" and review for a "clear abuse of discretion." Because we have not asked the parties to brief what standard of review applies to a trial court's decision on an application to set aside a conviction, I would leave this question for a future case.

5

asserts, trial courts are not required to consider victims' statements in deciding whether to set aside a conviction. Instead of taking its cues from the vague reference to the "public welfare" in the statute, the majority would do well to give meaning to the more specific provisions in the act concerning the rights of victims.

Finally, even if I agreed with the majority's new rule, I cannot go along with its inexplicable decision to entirely usurp the trial court's discretion by granting relief in this case instead of just announcing its new rule and then remanding this case back to the trial court for its application. The majority concludes that the defendant is entitled to an expungement as a matter of law—i.e., that denying his application was not one of the possible "reasonable and principled outcome[s]." *Babcock*, 469 Mich at 269. But, as noted above, even if defendant has satisfied the statutory prerequisites for an expungement, the trial court still has discretion whether or not to set his convictions aside. The majority never bothers to tell us why setting aside the defendant's convictions is consistent with the public welfare in this case. And although the majority states that "the victims' statements here were relevant," it never explains how they are relevant or should factor into the analysis. Even more confusingly, after explicitly acknowledging the relevance of victims' statements under the expungement statute, the majority silently reverses course and implicitly concludes that the victims' statements in this case could have no relevance in determining whether defendant's application should be granted. Rather than giving the trial court the opportunity to consider the victims' statements outside of the context of the "public welfare," the majority assumes that if the trial court were given such an opportunity, it would conclude that granting defendant's application is the only reasonable and principled outcome. In doing so, the majority pays lip service to the abuse-of-

6

discretion standard it applies and concludes that there is only a "single correct outcome."
*Id.*[4]

In conclusion, I do not believe the trial court abused its discretion by denying defendant's application to set aside his conviction, and I certainly do not agree that defendant is entitled to an expungement as a matter of law. After interpreting the broad concept of the "public welfare" as excluding the victims, the majority ignores the textual indications in the statute that the Legislature intended that victims be given an opportunity to provide input in the process. Because I believe the majority has improperly diminished the voice of the victims and usurped the trial court's discretion, I respectfully dissent.

David F. Viviano

---

[4] I also disagree with Justice ZAHRA that the statements made by the trial court when denying defendant's 2019 expungement application required the trial court to set aside defendant's conviction in 2021. When the trial court denied defendant's 2019 application, it indicated that it would likely set aside defendant's conviction in 2021 if defendant refiled his application and his circumstances otherwise remained the same. But the trial court was not precluded from reassessing whether defendant's conviction should be set aside.